1  JONATHAN E. NEUCHTERLEIN
2  General Counsel

3  SEENA D. GRESSIN (CA Bar No. 163368 - inactive)
4  GREGORY A. ASHE
   MICHAEL WHITE
5  Federal Trade Commission
6  600 Pennsylvania Avenue, N.W.
   Washington, DC  20580
7  Telephone:  (202) 326-2717 (Gressin)
8  Telephone: (202) 326-3719 (Ashe)
   Telephone: (202) 326-3196 (White)
9  Facsimile: (202) 326-3768
10 Email: sgressin@ftc.gov, gashe@ftc.gov, mwhite1@ftc.gov

11 MARICELA SEGURA (CA Bar No. 225999)
12 Federal Trade Commission
13 10877 Wilshire Blvd., Suite 700
   Los Angeles, CA 90024
14 Telephone:  (310) 824-4343
15 Facsimile: (310) 824-4380
   Email: msegura@ftc.gov
16

17 Attorneys for Plaintiff
18 FEDERAL TRADE COMMISSION

19              UNITED STATES DISTRICT COURT
20              CENTRAL DISTRICT OF CALIFORNIA

21 FEDERAL TRADE COMMISSION,
22                                      Case No.  CV13-5267 DSF(JCx)
                 Plaintiff,
23
24          v.                          COMPLAINT FOR PERMANENT
25                                      INJUNCTION AND OTHER
   ASSET & CAPITAL                      EQUITABLE RELIEF
26 MANAGEMENT GROUP, also d/b/a
27 ACM Group and ACMG,
28

**FILED**
CLERK, U.S. DISTRICT COURT
7/23/2013
CENTRAL DISTRICT OF CALIFORNIA
BY: _____IR_____ DEPUTY

ORIGINAL

| | |
|---|---|
| 1 | **CROWN FUNDING COMPANY,** |
| 2 | **LLC,** |
| 3 | **GREEN FIDELITY ALLEGIANCE,** |
| 4 | **INC.**, also d/b/a WRA, |
| 5 | **SJ CAPITOL, LLC**, also d/b/a SCG, |
| 6 | |
| 7 | **WESTERN CAPITAL GROUP,** **INC.**, also d/b/a ERA and LMR, |
| 8 | |
| 9 | **CREDIT MP, LLC**, also d/b/a AFGA and CMP, |
| 10 | |
| 11 | **ONE FC, LLC**, also d/b/a WPG and Western Performance Group, |
| 12 | |
| 13 | **THAI HAN,** |
| 14 | **JIM TRAN PHELPS,** |
| 15 | |
| 16 | **KEITH HUA,** and |
| 17 | **JAMES NOVELLA,** |
| 18 | Defendants. |

19      Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

20      1.      The FTC brings this action under Section 13(b) of the Federal Trade

21

22      Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 814 of the Fair Debt

23

24      Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*, to obtain temporary,

25      preliminary, and permanent injunctive relief, rescission or reformation of contracts,

26      restitution, the refund of monies paid, disgorgement of ill-gotten monies, the

27

28

appointment of a receiver, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FDCPA, 15 U.S.C. §§ 1692-1692p, in connection with their abusive and deceptive debt collection practices.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1692*l*.

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the FDCPA, 15 U.S.C. §§ 1692-1692p, which prohibits abusive, deceptive, and unfair debt collection practices.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), and

1692*l*(a).  Section 814 of the FDCPA further authorizes the FTC to use all of its

functions and powers under the FTC Act to enforce compliance with the FDCPA,

including the power to enforce the provisions of the FDCPA in the same manner as

if the violations were violations of an FTC trade regulation rule.  15 U.S.C.

§ 1692*l*.

## **DEFENDANTS**

6.      Defendant **Asset & Capital Management Group, Inc.** ("ACMG"),

also doing business as ACM Group and ACMG, is a California corporation that

has held itself out as doing business from addresses including the following:

17671 Irvine Blvd., Ste. 207, Tustin, CA 92780; and 17291 Irvine Blvd., No. 304,

Tustin, CA 92780.  ACMG also uses the mailing address P.O. Box 15848, Santa

Ana, CA 92735.  ACMG transacts or has transacted business in this District and

throughout the United States.

7.      Defendant **Crown Funding Company, LLC** ("Crown"), is a

Wyoming limited liability company that has held itself out as doing business from

addresses including the following:  One City Blvd., No. 1130, Orange, CA 92868;

1100 Town & Country Rd., Ste. 1340, Orange, CA 92868; and 2710 Thomes Ave.,

Ste. 191-88, Cheyenne, WY 82001.  Crown also uses the mailing address P.O. Box

15848, Santa Ana, CA 92735.  Crown transacts or has transacted business in this

District and throughout the United States.

8.      Defendant **Green Fidelity Allegiance, Inc.** ("Green Fidelity"), also doing business as WRA, is a California corporation that has held itself out as doing business from addresses including the following:  1520 Brookhollow Dr., Ste. 42, Santa Ana, CA 92705; and 2312 Park Ave., No. 407, Tustin, CA 92782.  Green Fidelity transacts or has transacted business in this District and throughout the United States.

9.      Defendant **SJ Capitol, LLC** ("SJ Capitol"), also doing business as SCG, is a California limited liability company that has held itself out as doing business from addresses including the following:  21478 Harvill Rd., Ste. 1, Perris, CA 92570; 75 Nuevo Rd., Ste. E-138, Perris, CA 92571; 12831 Moreno Beach Dr., Ste. 107-353, Moreno Valley, CA 92555; and 27588 Rosemont Court, Moreno Valley, CA 92555.  SJ Capitol transacts or has transacted business in this District and throughout the United States.

10.     Defendant **Western Capital Group, Inc.** ("Western Capital"), also doing business as ERA and LMR, is a Nevada corporation that has held itself out as doing business from addresses including the following:  41695 Date St., Ste. B, Murrieta, CA 92562; and 75 Nuevo Rd., Suite E-336, Perris, CA 92571.  Western Capital also uses the mailing address P.O. Box 15848, Santa Ana, CA 92735. Western Capital transacts or has transacted business in this District and throughout the United States.

11.     Defendant **Credit MP, LLC** ("Credit MP"), also doing business as AFGA and CMP, is a California limited liability company that has held itself out as doing business from the following address:  801 Park Center Dr., Ste. 120, Santa Ana, CA 92705.  Credit MP also uses the mailing address P.O. Box 15848, Santa Ana, CA 92735.  Credit MP transacts or has transacted business in this District and throughout the United States.

12.     Defendant **One FC, LLC** ("One FC"), also doing business as WPG and Western Performance Group, is a California limited liability company that has held itself out as doing business from addresses including the following:  1801 E. Parkcourt Place, Ste. B-102, Santa Ana, CA 92705; 28015 Smyth Dr., Valencia, CA 91355; and 13681 Newport Ave., Ste. 8#365, Tustin, CA 92780.  One FC also uses the mailing address P.O. Box 15848, Santa Ana, CA 92735.  One FC transacts or has transacted business in this District and throughout the United States.

13.     Defendant **Thai Han** ("Han") is or has been the president, chief financial officer, secretary, and manager of ACMG, the manager of Crown, and the president, treasurer, secretary, and director of Western Capital.  He also is or has been a signatory to the bank accounts of ACMG, Crown, Western Capital, Credit MP, and One FC.  At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants, including the acts and

practices set forth in this Complaint. Defendant Han resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

14.    Defendant **Jim Tran Phelps** ("Phelps") is or has been the secretary and treasurer of ACMG and secretary, treasurer, and director of Western Capital. He also is or has been a signatory to the bank accounts of ACMG and Western Capital. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants, including the acts and practices set forth in this Complaint. Defendant Phelps resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15.    Defendant **Keith Hua** ("Hua") is or has been an officer of One FC and Credit MP, and a manager of Crown and Western Capital. He also is or has been a signatory to the bank accounts of Crown and Western Capital. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants, including the acts and practices set forth in this Complaint. Defendant Hua resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and

throughout the United States.

16.     Defendant **James Novella** ("Novella") is or has been the president of Green Fidelity and a director of ACMG.  At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants, including the acts and practices set forth in this Complaint.  Defendant Novella resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

17.     Defendants are "debt collectors" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

## COMMON ENTERPRISE

18.     Defendants ACMG, Crown, One FC, Credit MP, Western Capital, SJ Capitol, and Green Fidelity (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and abusive acts and practices alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common officers, managers, business functions, employees, and office locations, and that commingled funds.  Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Han, Phelps, Hua, and Novella have

formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

19.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

20.    Defendants are third-party debt collectors that purchase portfolios of past-due consumer debt, primarily credit card debt, and collect payment on their own behalf from consumers nationwide.

21.    Defendants attempt to collect debts by contacting consumers using instrumentalities of interstate commerce including telephones, United States mail, and electronic mail.

22.    Defendants regularly use deception and false threats to extract money from consumers.  In numerous instances, Defendants:  (1) falsely represent to consumers that a lawsuit has been filed against them or will be filed imminently; (2) falsely represent or imply that Defendants or their collectors are process servers, or working with process servers, or employed by or working with lawyers; (3) falsely threaten consumers with arrest, imprisonment, property seizure, or wage

garnishment; (4) communicate with third parties, including consumers' employers and family members, for purposes other than obtaining location information about a consumer; and (5) fail to provide statutorily-required disclosures to consumers, including a disclosure explaining that consumers have the right to dispute and obtain verification of their alleged debts.

23.     Since at least 2009, Defendants have operated their debt collection enterprise through a conglomeration of entities, including more than a dozen debt collection companies, as well as domestic and foreign shell companies that receive payments from the enterprise.  Operating from boiler room locations in Orange and Riverside counties, the Defendants have registered the enterprise's debt collection companies to do business under numerous fictitious names consisting of three or four letters – ACMG, WRA, SCG, ERA, LMR, AFGA, CMP, and WPG among them – creating a virtual alphabet soup of business names and an elaborate corporate structure that has no apparent legitimate business rationale.  As various collection entities have gained notoriety or been restrained under federal court order, Defendants have replaced them with new collection entities.  The new entities engage in illegal debt collection practices that are indistinguishable from the illegal practices of the debt collection companies that preceded them.

### Defendants' Misrepresentations to Consumers

24.     Defendants' collection scheme is predicated on convincing consumers

that a debt collection lawsuit has been, or will soon be, filed against them and will

result in dire consequences unless the consumer pays Defendants promptly.

25.     In fact, in numerous instances, no lawsuit has been filed nor will soon

be filed against the consumers.  Rather, Defendants misrepresent the legal status of

consumers' purported debts as the subject of pending lawsuits to intimidate

consumers into paying them.

26.     In furtherance of the scheme, Defendants often use a two-step

collection process to lend credence to the central misrepresentation that legal

action against a consumer has begun or is imminent.

27.     In the first step, Defendants' collectors generally call consumers or

consumers' employers, family members, or other third parties and represent that

they are process servers, or are working with process servers, and are seeking to

serve the consumer with legal papers pertaining to a lawsuit against the consumer.

Often, Defendants' collectors add a sense of urgency to their call by asserting that

they are seeking to confirm that the consumer will be available to receive personal

service at a certain time and location.  In numerous instances, the collectors claim

that the consumer must call another number to obtain any information about the

lawsuit, then provide a callback number and a "case" number for the consumer to

reference when calling.  In numerous instances, Defendants' collectors warn that if

the consumer does not call within a limited time period, generally two or three

hours, he or she will be personally served with process to appear in court. Often, the collectors warn that the police or local sheriff will serve the consumer at the consumer's workplace.

28. In numerous instances, in placing these initial calls to consumers or third parties, Defendants' collectors do not state their name and capacity, and do not disclose enough information so as not to mislead the recipient as to the purpose of their call.

29. In numerous instances, in their initial communications with consumers, Defendants' collectors do not disclose that they are debt collectors attempting to collect a debt and that any information they obtain will be used for that purpose.

30. In truth and in fact, Defendants do not employ or contract with process servers to contact consumers or third parties, there is no lawsuit pending against the consumer, and neither a process server, the police, nor a sheriff is about the serve the consumer with legal process.

31. The second step of Defendants' collection process generally occurs when a consumer calls the number that Defendants' collectors provide in the initial call and is connected with a collector whose job is to secure the consumer's payment for Defendants.

32. In numerous instances, the collectors who answer the consumers' calls

falsely represent that they are with a law office or litigation department that is handling a lawsuit against the consumer. Even when Defendants' collectors disclose that the consumer is reaching a debt collector, in numerous instances they falsely assert that there is a pending lawsuit against the consumer. On these calls, Defendants' collectors generally state that the case involves a debt that the consumer owes. Defendants' collectors make additional representations to falsely imply that legal action has been taken or will be taken shortly against the consumer because of non-payment of the debt. In numerous instances, Defendants' collectors advise consumers that they can "settle" the action for an immediate payment of the entire debt, or offer consumers a payment plan. Generally, Defendants' collectors instruct the consumer that payment should be made over the telephone via his or her credit or debit card.

33.     In numerous instances, Defendants' collectors threaten that if the consumer does not resolve the debt immediately, Defendants will have the consumer arrested, or jailed, or will garnish the consumer's wages and/or seize the consumer's property.

34.     In truth and in fact, when Defendants' collectors threaten consumers with legal action, in numerous instances, no legal action has been taken against the consumer and Defendants do not intend to take any such legal action. In addition, Defendants cannot have a consumer arrested for non-payment of a private debt,

and, in numerous instances, cannot have a consumer's wages garnished or property seized because they have not filed an action and obtained a judgment against the consumer.

35.   In numerous instances, Defendants' collectors also communicate, or threaten to communicate, with consumers' employers, family members, or other third parties to apply pressure and create a sense of urgency on the part of the consumer so the consumer will pay the alleged debt to resolve the matter.

36.   In numerous instances, when Defendants communicate, or threaten to communicate, with consumers' employers, family members, or other third parties, Defendants already possess contact information for the consumer including the consumer's place of abode, telephone number, or place of employment.

37.   In numerous instances, when Defendants' collectors communicate with a third party in connection with the collection of a consumer's purported debt, Defendants' collectors disclose the consumer's purported debt to the third party.

38.   In numerous instances, Defendants do not, within five days of their initial communication with a consumer, provide the consumer with a written notice containing the amount of the debt and the name of the creditor, along with a statement that the collector will assume the debt to be valid unless the consumer disputes the debt within 30 days, as well as a statement that the debt collector will send a verification of the debt or a copy of the judgment if the consumer timely

disputes the debt in writing.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

39.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

40.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

41.    In numerous instances in connection with the collection of purported consumer debts, Defendants have represented, directly or indirectly, expressly or by implication, that:

a.    Defendants' collector is a process server, or is working with a process server, and is seeking to serve the consumer with legal papers pertaining to a lawsuit against the consumer;

b.    Defendants' collector is employed by, or working with, a lawyer who has reviewed the consumer's case and is preparing a lawsuit against the consumer;

c.    Non-payment of a purported debt will result in the consumer's arrest, or in the seizure, garnishment, or attachment of the consumer's property or wages; or

d.    Defendants have filed, or intend to file imminently, a lawsuit

against the consumer.

42.     In truth and fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 41 of this Complaint,

    a.     Defendants' collector is not a process server, is not working with a process server, and is not seeking to serve the consumer with legal papers pertaining to a lawsuit against the consumer;

    b.     Defendants' collector is not employed by, or working with, a lawyer who has reviewed the consumer's case and is preparing a lawsuit against the consumer;

    c.     Non-payment of a purported debt will not result in the consumer's arrest, or in the seizure, garnishment, or attachment of the consumer's property or wages; and

    d.     Defendants have not filed, and do not intend to file imminently, a lawsuit against the consumer.

43.     Therefore, Defendants' representations as set forth in Paragraph 41 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### VIOLATIONS OF THE FDCPA

44.     In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, which became effective on March 20, 1978, and has been in force since that date.

Section 814 of the FDCPA, 15 U.S.C. § 1692*l*, provides that a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.

45.    The term "consumer" as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), means "any natural person obligated or allegedly obligated to pay any debt."

46.    The term "debt" as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5), means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

47.    The term "location information" as defined in Section 803(7) of the FDCPA, 15 U.S.C. § 1692a(7), means "a consumer's place of abode and his telephone number at such place, or his place of employment."

## COUNT II

### Prohibited Communications With Third Parties

48.    In numerous instances, in connection with the collection of debts, Defendants have communicated with third parties for purposes other than acquiring location information about a consumer, without having obtained directly

the prior consent of the consumer or the express permission of a court of

competent jurisdiction, and when not reasonably necessary to effectuate a post-

judgment judicial remedy.

49.     Defendants' acts or practices, as described in Paragraph 48, violate

Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b).

## COUNT III

### <u>Failure To Meaningfully Disclose The Caller's Identity</u>

50.     In numerous instances, in connection with the collection of debts,

Defendants have engaged in conduct the natural consequence of which is to harass,

oppress, or abuse a person by placing telephone calls without meaningful

disclosure of the caller's identity.

51.     Defendants' acts or practices, as described in Paragraph 50, violate

Section 806(6) of the FDCPA, 15 U.S.C. § 1692d(6).

## COUNT IV

### <u>False, Deceptive, or Misleading Representations to Consumers</u>

52.     In numerous instances, in connection with the collection of debts,

Defendants have used false, deceptive, or misleading representations or means, in

violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not

limited to:

      a.     Falsely representing the character, amount, or legal status of a

debt, in violation of Section 807(2) of the FDCPA, 15 U.S.C. § 1692e(2);

    b.    Falsely representing or implying that non-payment of a debt will result in the arrest or imprisonment of a person or the seizure, garnishment, or attachment of a person's property or wages, when such action is not lawful or when Defendants have no intention of taking such action, in violation of Section 807(4) of the FDCPA, 15 U.S.C. § 1692e(4);

    c.    Threatening to take action that is not lawful or that Defendants do not intend to take, such as filing a lawsuit, in violation of Section 807(5) of the FDCPA, 15 U.S.C. § 1692(5);

    d.    Using a false representation or deceptive means to collect or attempt to collect a debt, or to obtain information concerning a consumer, in violation of Section 807(10) of the FDCPA, 15 U.S.C. § 1692(10); and

    e.    Failing to disclose in the initial communication with a consumer that Defendants are debt collectors attempting to collect a debt and that any information obtained will be used for that purpose, in violation of Section 807(11) of the FDCPA, 15 U.S.C. § 1692(11).

## COUNT V

### Failure To Provide A Validation Notice

53.    In numerous instances, in connection with the collection of debts, Defendants have failed to provide consumers, either in the initial communication

with a consumer or in a written notice sent within five days after the initial communication, with statutorily-required information about the debt and the right to dispute the debt.

54.    Defendants' acts or practices, as described in Paragraph 53, violate Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

## CONSUMER INJURY

55.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the FDCPA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

56.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

1

### **PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15

3

4

U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), and the

5

Court's own equitable powers, requests that the Court:

6

A.      Award Plaintiff such preliminary injunctive and ancillary relief as

7

8

may be necessary to avert the likelihood of consumer injury during the pendency

9

of this action and to preserve the possibility of effective final relief, including but

10

11

not limited to, temporary and preliminary injunctions, an order freezing assets,

12

immediate access to business premises, and appointment of a receiver;

13

B.      Enter a permanent injunction to prevent future violations of the FTC

14

15

Act and the FDCPA by Defendants;

16

C.      Award such relief as the Court finds necessary to redress injury to

17

18

consumers resulting from Defendants' violations of the FTC Act and the FDCPA,

19

including but not limited to, rescission or reformation of contracts, restitution, the

20

21

refund of monies paid, and disgorgement of ill-gotten monies; and

22

D.      Award Plaintiff the costs of bringing this action, as well as such other

23

and additional relief as the Court may determine to be just and proper.

24

25

26

27

28

1
2   Dated: July 22, 2013                    Respectfully submitted,
3
4                                            JONATHAN E. NEUCHTERLEIN
                                             General Counsel
5
6
7                                            SEENA D. GRESSIN
8                                            (CA Bar No. 163368 - inactive)
                                             GREGORY A. ASHE
9                                            MICHAEL WHITE
10                                           Federal Trade Commission
                                             600 Pennsylvania Ave., N.W.
11                                           Washington, D.C. 20580
12                                           Telephone: 202-326-2717 (Gressin)
                                             Telephone: 202-326-3719 (Ashe)
13                                           Telephone: 202-326-3196 (White)
14                                           Facsimile: 202-326-3768
15                                           Email: sgressin@ftc.gov, gashe@ftc.gov,
                                             mwhite1@ftc.gov
16
17                                           MARICELA SEGURA
18                                           (CA Bar No. 225999)
                                             Federal Trade Commission
19                                           10877 Wilshire Blvd, Suite 700
20                                           Los Angeles, CA 90024
                                             Telephone: 310-824-4343
21                                           Facsimile: 310-824-4380
22                                           Email: msegura@ftc.gov
                                             Attorneys for Plaintiff
23
24
25
26
27
28